IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01064-MSK-KLM

TIMOTHY MEEKS,

    Plaintiff,

v.

MR. CREWS, Deputy, in his official and individual capacities,
TINA, Nurse, in her official and individual capacities,
RENEE, Nurse, in her official and individual capacities,
DENVER HEALTH DOCTOR, Jane Doe, in her official and individual capacities, and
JAIL OFFICIALS, John Does, in their official and individual capacities,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant Steven Crews' ("Crews") **Motion to Dismiss Prisoner Complaint** [#27][1] (the "Motion").[2] Plaintiff, who is proceeding pro se,[3]

---

[1] "[#27]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

[2] Plaintiff has obtained an extension through January 24, 2014, by which to serve the other Defendants in this matter. *Minute Order* [#47]. This Recommendation, therefore, does not address Claim Two or Claim Three of Plaintiff's three claims, which are brought only against Defendants other than Defendant Crews.

[3] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

filed a Response [#30] in opposition to the Motion, and Defendant Crews filed a Reply [#34]. The Motion is thus ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion is referred to this Court for recommendation [#35]. Having reviewed the entire case file and being sufficiently advised, the Court **RECOMMENDS** that the Motion [#27] be **GRANTED**, as follows.

## I.  Summary of the Case

The following allegations of the Amended Complaint are accepted as true for the purpose of determining the Motion. Plaintiff is presently an inmate at Denver County Jail. *Am. Compl.* [#6] at 2. On June 5, 2012, Plaintiff had a physical altercation with a fellow inmate. *Id.* at 4. Defendant Crews, an on-duty deputy officer, restrained Plaintiff by grabbing his arms from behind, which caused a tear in Plaintiff's left biceps. *Id.* No other deputies were in the immediate area, and because there was no one to restrain the other inmate right away, the inmate took the opportunity to punch Plaintiff multiple times while Defendant Crews held Plaintiff. *Id.* Eventually a third inmate, Isaac Padilla, intervened to stop the attack by the other unnamed inmate. *Id.*

Plaintiff, who was in extreme pain, was then taken to the medical unit and seen by Nurse Tina, another Defendant in this matter. *Id.* Three days later, on June 8, 2012, Plaintiff was seen by Nurse Renee, another Defendant in this matter. *Id.* Plaintiff "begged her for a medical emergency in the deputy's office, where she laughed like I was joking." *Id.* Plaintiff was still in pain and states that there was obvious bruising on his left arm from his biceps down to his forearm. *Id.*

In mid-July, a female doctor, who is named in this case as Defendant Jane Doe,

denied Plaintiff surgery after he showed her his deformed biceps. *Id.* She told him that the injury was cosmetic and that only elite professional athletes got the surgery he was requesting. *Id.* Instead of surgery, she put him on a weekly physical therapy regimen, which Plaintiff was normally forced to do by himself in his cell because he was only permitted to go to physical therapy sessions twice in two months. *Id.* at 5.

Plaintiff brings three Eighth Amendment claims against Defendants in this matter, but the first claim is the only one brought against Defendant Crews.[4] *Id.* at 6. Plaintiff claims that Defendant Crews violated his Eighth Amendment rights by using excessive force during Plaintiff's altercation with the other inmate, thereby leading to the cruel and unusual punishment of tearing Plaintiff's left biceps. *Id.* Plaintiff also asserts that Defendant Crews violated this right by holding on to Plaintiff and allowing the other inmate to punch him. *Id.* In recompense, Plaintiff seeks compensatory and punitive damages. *Id.* at 11.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

---

[4] No other Defendant is named in this first claim.

granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

**A.    Exhaustion of Administrative Remedies**

Defendant Crews argues that Plaintiff's first claim for relief is barred by Plaintiff's failure to exhaust his administrative remedies. *Motion* [#27] at 5-7. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted at the facility level before a prisoner may challenge those conditions in federal court. Specifically, the exhaustion provision provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on the plaintiff to sufficiently plead exhaustion or attach exhibits proving exhaustion. *Jones*, 549 U.S. at 216. Rather, the burden is on the defendant to assert a failure to exhaust in his dispositive motion. *Id.* Following *Jones*, the Tenth Circuit has recognized that dismissal pursuant to section 1997e(a) for failure to exhaust administrative remedies cannot usually be made on pleadings without proof. *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) (finding that "'only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse'") (citations omitted). Moreover, the Tenth Circuit has held that "a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue." *Aguilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (quotation and citation omitted).

Here, it is not clear from the face of the Amended Complaint that Plaintiff has failed to exhaust his administrative remedies. In fact, Plaintiff affirmatively pleads that he did so. *See Am. Compl.* [#6] at 9. While the Court has the discretion to notify the parties that it will treat Defendant Crews' Motion as a motion for summary judgment for the purpose of determining Defendant Crews' exhaustion argument, the Court declines to do so at this time due to its findings on Defendant Crews' other arguments in the Motion, as addressed below. Accordingly, the Court **recommends** that Defendant Crews' exhaustion argument be **denied without prejudice**.

**B.    Qualified Immunity**

Defendant Crews argues that, to the extent Plaintiff seeks to hold him individually liable, he is entitled to qualified immunity. *Motion* [#27] at 8-9. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When the defense of qualified immunity is raised, the Court must consider whether Plaintiff's factual allegations demonstrate that Defendant Crews violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the

right was clearly established." *Id.* In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a court may review these factors in any order, using its discretion to determine which of the factors to review first in light of the circumstances of the case. *Id.* at 236. Because the Court finds that Plaintiff's factual allegations fail to demonstrate that Defendant Crews violated a constitutional right, the Court does not need to address whether that constitutional right was clearly established at the time of the alleged violation.

Plaintiff contends that Defendant Crews' use of force was excessive and violated Plaintiff's Eighth Amendment rights. Prison officials violate the Eighth Amendment when they use force "maliciously and sadistically" in order to cause harm, regardless of whether the inmate suffered any injury. *Hudson v. McMillian*, 503 U.S. 1, 9. "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* To be sure, not every "push or shove" by a prison guard amounts to a constitutional violation. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989). A minor use of force may be de minimis if it "is not of the sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

As with traditional Eighth Amendment claims, the Court's analysis of Plaintiff's excessive force claim involves both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991). First, the Court considers whether the alleged force "was objectively harmful enough to establish a constitutional violation." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2002) (citation omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above de minimis uses of force "are sufficiently grave to form

the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9-10 (citations omitted). While the presence of an injury is not required, presence or absence of an injury is a factor in the determination of whether Defendant Crews's conduct constituted an objectively serious use of force. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that "significant physical injury" is not required, but "[t]he extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain").

Considering th objective component first, Plaintiff argues that the blows inflicted on him by the other inmate while Defendant Crews held Plaintiff are sufficient to constitute an objectively serious use of force. The Court cannot agree. First, there is the obvious problem that the blows were inflicted by the other inmate, not by Defendant Crews. Second, there are no allegations regarding how hard Plaintiff was punched, where the blows landed, over what length of time Plaintiff was held by Defendant Crews and punched by the other inmate, or whether Plaintiff suffered any injury from the punches, lasting or not. Instead, Plaintiff merely conclusorily states that he suffered physical, emotional, and mental injury and that Defendant Crews' actions exposed him to an unreasonable risk of serious harm. *Am. Compl.* [#6] at 6. Even assuming that the inmate's actions can be attributed to Defendant Crews for purposes of determining whether there was an objectively serious use of force, the Court finds that the conduct, as alleged, is not sufficiently grave to implicate a constitutional injury. *See, e.g.*, *Sheffey v. Greer*, 391 F. Supp. 1044, 1046 (E.D. Ill. 1975) (holding that a punch in the face does not violate the Eighth Amendment because "although a spontaneous attack by a guard is 'cruel' and it is hoped 'unusual,' " it does not rise to the level of shocking or brutal conduct) (citations omitted).

However, the Court finds that the objective component is satisfied otherwise. In particular, the Court notes that Plaintiff asserts that his left biceps was torn by Defendant Crews' action, and that this injury allegedly resulted in widespread bruising, pain, lack of sleep, elbow tendinitis, and deformity. *Am. Compl.* [#6] at 6. While not necessarily dispositive, the allegation of ongoing pain tends to show that Defendant Crews' use of force was more than de minimis. *See Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983) (holding that lasting injury or severe pain that is more than momentary is necessary for an Eighth Amendment claim). For the purpose of deciding the Motion to Dismiss, the Court finds that the objective component is met by these allegations.

Second, as to the subjective component, the Court considers whether Defendant Crews intended harm, i.e., whether he acted "maliciously and sadistically." *See Hudson*, 503 U.S. at 9. Indeed, the touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain and restore discipline or maliciously and sadistically" to cause harm. *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (quoting *Whitley*, 475 U.S. at 320-21). The subjective element can only be proved by showing that Defendant Crews acted with a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 837(1994); *Hudson*, 503 U.S. at 8. In other words, "[i]n deference to the need to maintain order in a prison environment, liability will not attach in these particular circumstances unless the challenged force is 'applied . . . maliciously and sadistically for the very purpose of causing harm.'" *Blackmon v. Sutton*, 734 F.3d 1237 (10th Cir. 2013) (quoting *Hudson*, 503 U.S. at 6).

Giving deference to prison officers' motives for using force against prisoners, the Court concludes that allegations regarding a single instance of pulling Plaintiff's arm and

restraining him with his arms behind his back, even if true, do not rise to the level of a constitutional violation. *See, e.g.*, *Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983) (holding that unprovoked pushing of inmate does not rise to the level of cruel and unusual punishment). In this case, the allegations underscore that Defendant Crews was prompted to restrain Plaintiff because Plaintiff and another inmate were having a physical altercation and because no other deputies were initially present. *See Am. Compl.* [#6] at 6 (suggesting that Defendant Crews could have waited for other deputies before intervening in the altercation). While the Court makes no comment regarding the appropriateness of Defendant Crews' decisions about how to handle this particular situation, there is no indication in the Amended Complaint, except for Plaintiff's conclusory statements, that force was "applied [by Defendant Crews] . . . maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6. Defendant Crews' alleged actions were not repugnant to the conscience of mankind so as to rise to the level of a constitutional violation. *See Hudson*, 503 U.S. at 9-10; *see also Sampley*, 704 F.2d at 496 (noting that an intentional tort does not necessarily amount to a constitutional violation).[5]

Accordingly, the Court finds that Plaintiff has failed to allege an Eighth Amendment violation against Defendant Crews. Defendant Crews is therefore entitled to qualified immunity, and the Court need not address the second element of the qualified immunity analysis. The Court thus **recommends** that Plaintiff's first claim for violation of the Eighth Amendment against Defendant Crews in his individual capacity be **dismissed without**

---

[5] Plaintiff has provided additional allegations in his Response [#30] and attached declarations [#32, #33]. The Court has examined these allegations and finds that further amendment of Plaintiff's Amended Complaint with these allegations would not alter the outcome of its analysis here.

**prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).

**C.     Official Capacity Claim and *Monell***

The Court next addresses Plaintiff's claim against Defendant Crews in his official capacity.  Claims against public officials in their official capacities are essentially claims against the governmental entity itself.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 & n.55 (1978).  Because the Court has found that Plaintiff failed to state an Eighth Amendment claim against Defendant Crews, and thus that this claim should be dismissed against him in his individual capacity, the Court must necessarily recommend that any claim asserted against him in his official capacity should be dismissed as well.  Accordingly, the Court **recommends** that Plaintiff's first claim for violation of the Eighth Amendment against Defendant Crews in his official capacity be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 127.

### IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#27] be **GRANTED** and that Plaintiff's Claim One be **DISMISSED without prejudice**.[6] *See Am. Compl.* [#6] at 6.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

---

[6] As noted above, Claim Two and Claim Three remain in this lawsuit.

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: December 9, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge